UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

AMERICAN CUSTOMER
SATISFACTION INDEX, LLC,

          Plaintiff,                          Case No. 17-cv-12554
                                                 Hon. Matthew F. Leitman

v.

GENESYS TELECOMMUNICATIONS
LABORATORIES, INC., *et al*,

          Defendants/Third-Party Plaintiffs

v.

CFI GROUP U.S.A., LLC

          Third-Party Defendant.
_____/

## OPINION AND ORDER GRANTING IN PART AND DENYING IN PART THIRD-PARTY DEFENDANT CFI GROUP U.S.A., LLC'S MOTION TO DISMISS THIRD-PARTY COMPLAINT (ECF #52)

Plaintiff American Customer Satisfaction Index, LLC ("ACSI") claims that Interactive Intelligence, Inc. ("Interactive") infringed certain of its trademarks. (*See* Am. Compl., ECF #28.) In this action, ACSI attempts to hold Defendant Genesys Telecommunications Laboratories, Inc. ("Genesys") liable for that infringement. (*See id.*) ACSI says that Genesys is liable because Genesys merged with Interactive and, through that merger, became Interactive's successor in interest. (*See id.*)

Genesys has filed a Third-Party Complaint against CFI Group, U.S.A., Inc. (*See* Third-Party Compl., ECF #47.)  Genesys seeks indemnification from CFI Group for any alleged infringement committed by Interactive. (*See id.*)  Genesys also asserts claims against CFI Group for negligent misrepresentation and fraudulent inducement. (*See id.*)  CFI Group has now moved to dismiss Genesys' Third-Party Complaint. (*See* Mot. to Dismiss, ECF #52.)  For the reasons that follow, the motion is **GRANTED IN PART AND DENIED IN PART**.

## I[1]

### A

In 1994, Dr. Claes Fornell, a professor at the University of Michigan's Ross School of Business, created the American Customer Satisfaction Index (the "Index"). (*See* Third-Party Compl. at ¶¶ 12-13, ECF #47 at Pg. ID 393.)  The Index "is a national cross-industry measure of customer satisfaction." (*Id.* at ¶13, Pg. ID 393.)  Dr. Fornell developed the Index in partnership with, among others, CFI Group, a marketing and consumer-survey company that he founded and chairs. (*See id.* at ¶¶ 12, 14, Pg. ID 393-94.)  In 2008, Dr. Fornell founded a second, related marketing company, ACSI. (*See id.* at ¶17, Pg. ID 394.)

---

[1] The facts in this section are taken primarily from Genesys' Third-Party Complaint and, as the Court must, it assumes those facts to be true for the purposes of CFI Group's motion to dismiss.

"CFI Group works alongside ACSI [] to develop and publish benchmarks and scores for the [] Index." (*Id.* at ¶19, Pg. ID 394.) CFI Group also uses "ACSI technology" to "determine[] the precise questions, phrasing, and scales" that it uses to "accurately measure customer satisfaction." (*Id.* at ¶21, Pg. ID 395.)

**B**

Interactive "was a global provider of business communication solutions for the contact center market, including automation software, enterprise telephony, and enterprise messaging." (*Id.* at ¶23, Pg. ID 395.) "In early 2008, Interactive [] developed an automated post-call customer satisfaction survey application as an extension of its software suite. The survey application was designed to allow contact center managers to craft customized survey questions that would be included in automated post-call surveys." (*Id.*)

**C**

Shortly after Interactive created its survey application, CFI Group "contacted Interactive [] to explore whether it would be interested in adding CFI Group's survey questions and templates" to the application. (*Id.* at ¶24, Pg. ID 395.) CFI Group told Interactive that its survey questions and templates were from an "ACSI question library" and that if Interactive used those questions in its survey application, Interactive could market the application as "ACSI-compliant" and "ACSI-based." (*Id.* at ¶¶ 82-83, Pg. ID 404.) CFI Group further assured Interactive that

"Interactive['s] future use and marketing of CFI Group's 'ACSI question library' and 'ACSI-ready' survey questions and templates would not infringe the rights of any third parties" (*i.e.*, ACSI). (*Id.* at ¶82, Pg. ID 404)

Based on these representations by CFI Group, on April 29, 2008, Interactive entered into a five-year cooperative marketing and licensing agreement with CFI Group (the "License Agreement"). (*See id.* at ¶88, Pg. ID 405.) In the License Agreement, CFI Group warranted to Interactive that Interactive's "use of Marks … and other Materials provided to [Interactive would] not infringe on the rights of any third party…." (License Agmt. at ¶8(a), ECF #52-1 at Pg. ID 446.[2]) CFI Group also "warrant[ed] that [it] own[ed] all rights in [its survey questions and templates] … and Interactive's use of the [questions and templates] pursuant to [the License Agreement would] not infringe the rights of any third party." (*Id.*) Finally, CFI Group agreed to "indemnify, defend[,] and hold harmless [Interactive] against any loss, damage[,] or expense incurred by [Interactive] … as a result of claims, actions, or proceedings brought by any third parties" arising from allegations that would constitute a breach of the agreement. (*Id.* at ¶9(a), ECF #52-1 at Pg. ID 447.)

---

[2] The License Agreement is not attached to the Third-Party Complaint. However, it is referred to in that pleading and is central to Genesys' claims. Accordingly, the Court may consider it when ruling on CFI Group's motion to dismiss. *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.,* 551 U.S. 308, 322-23 (2007); *Greenberg v. Life Ins. Co. of Virginia*, 177 F.3d 507, 514 (6th Cir. 1999); *Commercial Money Ctr., Inc. v. Illinois Union Ins. Co.*, 508 F.3d 327, 336 (6th Cir. 2007).

After the parties executed the License Agreement, CFI Group and Interactive "worked together to prepare materials that would be provided to Interactive['s] customers and potential customers as part of [a] joint marketing effort[]." (Third-Party Compl. at ¶36, Pg. ID 397.) "When preparing [these] joint marketing materials, CFI Group represented to Interactive [] that it was appropriate to describe its survey questions and templates as, among other things, 'ACSI surveys' 'ACSI questions,' 'ACSI-complaint,' or 'ACSI-based.'" (*See id.* at ¶37, ECF #47 at Pg. ID 397.) Based on CFI Group's representations, Interactive used the terms "'ACSI surveys' "ACSI questions,' "ACSI-compliant,' and 'ACSI-based' to describe CFI Group['s] surveys and template" in its marketing materials. (*Id.* at ¶38, Pg. ID 397.) Interactive also used ACSI's logo based on CFI Group's "'authoriz[ation]" that it had permission to do so. (*Id.* at ¶38, Pg. ID 397-98.)

**D**

The License Agreement expired in April 2013. Nonetheless, "CFI Group and Interactive [] continued performing under the terms of the License Agreement as if the Agreement was still in effect." (*Id.* at ¶42, ECF #47 at Pg. ID 398.) "Among other things, after the end of the initial five-year contractual term, CFI Group provided updated survey questions and templates to [Interactive], …. the parties updated certain marketing materials and user guides, … [and] CFI Group repeatedly

confirmed that it was 'a partner' with Interactive." (*Id.* at ¶42, Pg. ID 399.) The parties' relationship ended in 2017. (*See id.* at ¶¶ 46-48, Pg. ID 399-400.)

At no time during the parties' relationship "did CFI Group inform Interactive [] that its marketing of CFI Group materials might potentially infringe on ACSI's or any other entity's intellectual property rights." (*Id.* at ¶46, Pg. ID 399.) Nor "did CFI Group object to Interactive['s] use of its survey questions and templates or Interactive['s] references to those materials as constituting 'ACSI surveys,' 'ACSI questions,' 'ACSI-compliant,' and 'ACSI-based.'" (*Id.* at ¶47, Pg. ID 400.)

## E

In 2017, Genesys and Interactive merged. (*See id.* at ¶2, Pg. ID 392.) As a result of the merger, Genesys "succeeded to all rights [and] privileges …. of Interactive." (*Id.* at ¶3, Pg. ID 392.) Thus, "Genesys is now the real party in interest with respect to all assets owned by Interactive prior to the merger, including Interactive['s] contractual rights and any claims belonging to Interactive []." (*Id.* at ¶4, Pg. ID 392.)

## F

On August 8, 2017, ACSI filed this action against Genesys and Interactive. (*See* Compl., ECF #1; Am. Compl., ECF #28.) ACSI alleges, among other things, that Interactive wrongfully "marketed and sold its products [as using] 'ACSI scores' and … [used] a derivative of [t]he ACSI trademark in marketing and selling its

products and services." (Am. Compl. at ¶40, ECF #28 at Pg. ID 128.) ACSI further insists that because Genesys merged with Interactive, Genesys is liable for Interactive's wrongful acts as Interactive's successor-in-interest. (*See id.* at ¶¶ 6-7, Pg. ID 123.)

## II

Genesys filed its Third-Party Complaint against CFI Group on June 11, 2018. (*See* Third Party Compl., ECF #47.) Genesys insists that "[t]o the extent that ACSI [] can prove that Genesys, in its capacity as successor in interest to Interactive [], is liable for trademark infringement or unfair competition, Genesys' liability will derive from the acts, omissions, breaches of warranties, and/or misrepresentations of CFI Group relating to the nature of its survey templates and questions, as opposed to any fault on the part of Genesys or its predecessor in interest Interactive." (*Id.* at ¶53, Pg. ID 400-01.)

Genesys' Third-Party Complaint includes five counts, all of which arise under Michigan law:

- In Count I, Genesys alleges that CFI Group breached certain warranties in the License Agreement, including the warranty that Interactive's use of ACSI's trademarks would not "infringe the rights of any third party." (*Id.* at ¶¶ 54-59, Pg. ID 401.)

- In Count II, Genesys asserts that that it is entitled to express contractual indemnity from CFI Group under the terms of the License Agreement. (*See id.* at ¶¶ 60-65, Pg. ID 401-02.)

- In Count III, Genesys claims that to the extent that it is not entitled to contractual indemnity, it is entitled to indemnity from CFI Group based on the doctrine of implied contractual indemnity and/or common law indemnity. (*See id.* at ¶¶ 66-72, Pg. ID 402-03.)

- In Count IV, Genesys alleges that CFI Group "misrepresented to Interactive [] the nature of CFI Groups products and services," such as CFI Group's ability to allow Interactive to use ACSI's trademarks. (*Id.* at ¶¶ 73-79, Pg. ID 403-04.)

- In Count V, Genesys claims that CFI Group fraudulently induced Interactive into executing the License Agreement by misrepresenting its rights to use ACSI's trademarks. (*See id.* at ¶¶ 80-89, Pg. ID 404-05.)

CFI Group moved to dismiss Genesys' Third-Party Complaint on July 13, 2018. (*See* Mot. to Dismiss, ECF #52.) The Court held a hearing on CFI Group's motion on December 12, 2018, and the parties thereafter submitted supplemental briefs. (*See* ECF ## 69, 72.)

### III

CFI Group has moved to dismiss Genesys' Third-Party Complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure. "To survive a motion to dismiss" under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v.* Twombly, 550 U.S. 544, 555 (2007)). A claim is facially plausible when a plaintiff pleads factual content that permits a court to reasonably infer that the defendant is liable for the alleged

misconduct. *See id.* When assessing the sufficiency of a plaintiff's claim, a district court must accept all of a complaint's factual allegations as true. *See Ziegler v. IBP Hog Mkt., Inc.*, 249 F.3d 509, 512 (6th Cir. 2001). "Mere conclusions," however, "are not entitled to the assumption of truth. While legal conclusions can provide the complaint's framework, they must be supported by factual allegations." *Iqbal*, 556 U.S. at 664. A plaintiff must therefore provide "more than labels and conclusions," or "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 556. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

## IV

CFI Group has moved to dismiss Genesys' claims on several grounds. The Court will examine each in turn.

## A

CFI Group initially argues that Genesys has no right to express contractual indemnity under the terms of the License Agreement for two reasons. First, CFI Group asserts that Genesys is not entitled to express contractual indemnity because the License Agreement prohibited Interactive from assigning that right to Genesys. CFI Group relies upon the provision of the License Agreement that states that "[n]either party may assign this Agreement by operation of law or otherwise without prior written consent of the other party …. Any assignment other than provided in

this Section is void and of no force or effect." (License Agmt. at ¶11(c), ECF #52-1 at Pg. ID 448.)  The Court is not yet convinced that this anti-assignment provision precludes Genesys from obtaining express contractual indemnity from CFI Group.

"The modern trend with respect to contractual prohibitions on assignments is to interpret them narrowly, as barring only the delegation of duties, and not necessarily as precluding the assignment of rights from assignor to assignee." *Jawad A. Shah, M.D. v. State Farm Mutual Ins. Co.*, --- N.W. 2d ---, 2018 WL 2121787, at *11 (Shapiro J., concurring in part and dissenting in part on other grounds) (Mich. Ct. App. May 8, 2018) (quoting *In re Jackson*, 311 B.R. 195, 201 (W.D. Mich. Bankr. 2004)).  *See also Morris v. Schnoor*, 2014 WL 2355705, at *27 (Mich. Ct. App. May 29, 2014) (quoting *Wonsey v. Life Ins. Co. of North America*, 32 F.Supp.2d 939, 943 (E.D. Mich. 1998)) (same).  Here, Genesys' third-party claim for express contractual indemnification is not based on the delegation of any duties. It is based on the delegation of Interactive's *right* under the License Agreement to obtain indemnity from CFI Group.  Moreover, CFI Group has not cited any case in which a Court has held that a general anti-assignment provision in a contract prohibits the assignment of an express contractual right to indemnity. The Court is thus not yet persuaded that the anti-assignment provision of the License Agreement bars Genesys' third-party claim for express contractual indemnification.

Second, CFI Group argues that any purported assignment of rights to Genesys is void based on a federal common law rule that, according to CFI Group, prohibits the "free assignability" of intellectual property rights. (Mot. to Dismiss, ECF #52 at Pg. ID 432, quoting *Cinconm Sys., Inc. v. Novelis Corp.*, 581 F.3d 431, 436 (6th Cir. 2009)). But even if the rule described by CFI Group exists, it does not apply here.

Genesys' claim to express contractual indemnification is not based on the transfer of any *intellectual property* rights from Interactive. Indeed, Genesys is not trying to enforce those rights in this action. Instead, Genesys seeks only to enforce only Interactive's right to indemnification under the terms of the License Agreement. Thus, to the extent that the federal common law rule that CFI Group relies upon exists, that rule does not bar Genesys' claim for express contractual indemnification.

**B**

At the hearing on Genesys' motion, and in a supplemental brief (*see* ECF #69), CFI Group raised a new argument as to why Genesys is not entitled to bring an express contractual indemnification claim as Interactive's successor. CFI Group says that "the claim for indemnity" in this action did not "accrue[]" until long after Interactive and Genesys merged. (*Id.* at Pg. ID 617.) CFI Group therefore insists that Interactive could not have assigned its claim for express contractual indemnification to Genesys when those two companies merged. (*See id.*) The Court disagrees.

CFI Group's accrual-of-indemnity-claim argument relies almost entirely on the decision of the United States District Court for the Western District of Michigan in *Century Indem. Co. v. Aero-Motive Co.*, 318 F.Supp.2d 530 (W.D. Mich. 2003) ("*Aero I*"). But, the *Aero I* court later revisited and reversed the very portion of its ruling on which CFI Group relies. *See Century Indem. Co. v. Aero-Motive Co.*, 2004 WL 5642427, at ** 3-4 (W.D. Mich. Mar. 12, 2004) ("*Aero II*"). The Court is therefore not persuaded that *Aero I* bars the assignment of the right to express contractual indemnity to Genesys. Like the court in *Aero II*, this Court presently sees "no valid reason for not enforcing the assignment" of express contractual indemnification rights to Genesys. *Id.*

## C

CFI Group next argues that Genesys cannot recover under the implied indemnity theory pleaded in Count III of the Third-Party Complaint. (*See* Mot. to Dismiss, ECF #52 at Pg. ID 433-34.) Michigan law recognizes two types of implied indemnity: common law indemnity and implied contractual indemnity. *See*, *e.g.*, *Fishbach-Natkin, Inc. v. Shimizu America Corp.*, 854 F.Supp. 1294, 1300 (E.D. Mich. 1994) (explaining differences between common law indemnity and implied contractual indemnity). CFI Group insists that Genesys is not entitled to implied indemnity under either theory. (*See* Mot. to Dismiss, ECF #52 at Pg. ID 433-34.) The Court agrees.

"Common law indemnity is based on the equitable principle that where the wrongful act of one results in another being held liable, the latter party is entitled to restitution from the wrongdoer." *Skinner v. D-M-E Corp.*, 335 N.W.2d 90, (Mich. App. 1983). "If the complaint alleges only active negligence or fault, the defendant is not entitled to common law indemnity." *Great American Ins. Co. v. Wade-Trim/Associates*, 952 F.2d 403 (Table), 1992 WL 1679, at \*4 (6th Cir. Jan. 7, 1992). Here, as in *Great American Ins.*, ACSI's Complaint alleges that Interactive was actively at fault and ACSI does not seek vicarious or derivative liability against Interactive. Accordingly, Genesys is not entitled to common law indemnity from CFI Group. *See*, *e.g.*, *Williams v. Litton Systems, Inc.*, 416 N.W.2d 704, 706 (Mich. App. 1987) ("As the primary complaint here alleged only active negligence … [the third-party plaintiff] was not free to seek common-law indemnity against [the third-party defendant]").

The question of whether Genesys is entitled to implied contractual indemnity is a much harder question. "Unfortunately, the law of [implied contractual] indemnity [in Michigan] is highly complicated and hardly a model of clarity." *Id.* It appears that when courts examine a claim for implied contractual indemnity, they look at both the initial complaint (to see if there are any allegations of active negligence) *and* the third-party complaint (to see if that pleading contains allegations of vicarious liability that could excuse the alleged active fault). *See id.* Thus, where

a complaint alleges active fault, and the third-party complaint "does not contain any allegations of vicarious liability or [liability] by operation of law," the third party is not entitled to implied contractual indemnity. *Great American Ins. Co.*, 1992 WL 1679, at *5. *See also Williams*, 416 N.W.2d at 707 (rejecting claim of implied contractual indemnity where third-party plaintiff "merely alleged a complete defense to the original action" without any "allegations of vicarious liability"); *Gruett v. Total Petroleum, Inc.*, 451 N.W.2d 608, (Mich. App. 1990) *rev'd on other grounds* 463 N.W.2d 711 (Mich. 1990) (applying *Williams* and rejecting claim of implied contractual indemnity where "third-party complaint lacked any allegations of vicarious liability" and "only asserted that [third-party plaintiff] was 'free of any active negligence'").

The Court acknowledges that in at least two cases, the Michigan Court of Appeals has allowed a third party to pursue a claim for implied contractual indemnity even where it was alleged to be actively at fault. *See Hill v. Sullivan Equip. Co.*, 273 N.W.2d 527 (Mich. App. 1978) and *Kirin v. Riise Engineering Co., Inc.*, 384 N.W.2d 149 (Mich. App. 1986). But, the Michigan Court of Appeals has disapproved of these cases. *See Williams*, 416 N.W.2d at 706-07 ("[W]e are constrained to concluded that *Hill* and *Kirin* were wrongly decided and we decline to follow this line of authority"); *Skinner*, 335 N.W.2d at 92 n.3 ("To the extent that the *Hill* majority found that freedom from active negligence on the part of the indemnitee

14

was not a prerequisite to the maintenance of a cause of action for implied contractual indemnity we decline to follow it").

Applying this "highly complicated" line of authority here,[3] the Court concludes that Genesys is not entitled to implied contractual indemnity form CFI Group. As described above, ACSI's Complaint alleges that Interactive was actively at fault for infringing ACSI's trademarks. And Genesys' Third-Party Complaint does not include any allegations of vicarious liability. Nor does it contain any allegations of liability by operation of law. Accordingly, under the Michigan authority described above, Genesys' claim for implied contractual indemnity fails.

Finally, Genesys appears to offer one last argument as to why, as Interactive's successor, it may pursue a claim of implied contractual indemnity even though ACSI alleges that Interactive committed active fault and/or negligence. Genesys seems to contend that an allegation of active fault does not bar a claim for implied contractual indemnity where there was a special relationship between the parties to the claim and where the party against whom the claim is asserted was in a better position to prevent the harm at issue. (*See* Genesys Supp. Br., ECF #72 at Pg. ID 723-25, citing *Dale v. Whiteman*, 202 N.W.2d 797, 800-01 (Mich. 1972).) Genesys suggests that

---

[3] The Court acknowledges that most of the cases discussed above are from the 1980s and earlier. However, none of the cases cited by the parties, and none of the cases that the Court came across in its own independent research, reveals that this lack of clarity has been resolved since those cases were decided.

it may pursue its implied contractual indemnity claim because Interactive and CFI Group had a special relationship and because CFI Group was in the best position to prevent any unlawful use of ACSI's trademarks. (*See id.*) However, the Michigan Court of Appeals has twice rejected this theory of implied contractual indemnity. See *Hadley v. Trip Tool Co.*, 372 N.W.2d 537 (Mich. App. 1985) ("[The third-party plaintiff] reads *Dale* to say that an implied contract of indemnity may be found where the indemnitee is without personal fault *or* where the would-be indemnitor was better situated to adopt preventive measures to reduce the likelihood of injury and liability than was the defendant [….] [But] the [Michigan] Supreme Court [has] specifically disavowed [this] interpretation of *Dale*"); *Williams*, 416 N.W.2d at 706 ("Ford contends that the Supreme Court opinion [in *Dale*], should be read for the proposition that an implied contract of indemnity may be found in the alternative situation where the indemnitee is without personal fault or where the potential indemnitor was better situated to reduce the risk of injury. The same argument was considered and flatly rejected in *Hadley*"). *See also Langley v. Harris Corp.*, 321 N.W.2d 662, 666 n.4 (Mich. 1982). The Court is not persuaded that any alleged special relationship saves Genesys' claim for implied contractual indemnity.

## D

CFI Group next asserts that the Court should dismiss Genesys' negligent misrepresentation claim in Count IV of the Third-Party Complaint. (*See* Mot. to

Dismiss, ECF #52 at Pg. ID 434-36.) CFI Group argues that this claim fails because it "'is well-settled that an action in tort requires a breach of duty separate and distinct from a breach of contract" (*id.* at Pg. ID 436, quoting *Garden City Osteopathic Hosp. v. HBE Corp.*, 55 F.3d 1126, 1134 (6th Cir. 1995), and Genesys' negligent misrepresentation claim "merely restates the claimed obligations in the [License Agreement]." (*Id.*) The Court concludes that dismissal of Genesys' negligent misrepresentation claim is not appropriate at this time.

CFI Group is correct that Genesys cannot recover on a negligent misrepresentation claim that is based on a breach of contractual duties. But it does not follow from that conclusion that Genesys' negligent misrepresentation claim must be dismissed now.

The Federal Rules of Civil Procedure allow parties to plead otherwise inconsistent claims or theories as alternatives to one another. *See* Fed. Rule Civ. Proc. 8(d)(2) and 8(d)(3). That is what Genesys has done here. Genesys has pleaded, in the alternative, that (1) CFI Group breached the warranties in the License Agreement and (2) if the License Agreement expired and was no longer in force, CFI Group is liable for post-termination negligent misrepresentations to Interactive about Interactive's use of ACSI's trademarks. Such alternative pleading is appropriate here because there is a real dispute between the parties about whether the License Agreement was effective after 2013. Accordingly, Genesys has properly

pleaded its negligent misrepresentation as an alternative to its breach of warranty claim, and the Court need not dismiss that claim at this time.

## E

CFI Group next maintains that Genesys' fraudulent-inducement claim in Count V of the Third-Party Complaint fails to state a viable claim for two reasons. (*See* Mot. to Dismiss, ECF #52 at Pg. ID 436-39.) The Court concludes that dismissal of the fraudulent-inducement claim is not appropriate at this time.

First, CFI Group asserts that Genesys' fraudulent-inducement claim fails to plead fraud with the particularity required under Federal Rule of Civil Procedure 9(b). (*See* Mot. to Dismiss, ECF #52 at Pg. ID 439-40.) The Court has reviewed the relevant allegations in the Third-Amended Complaint and concludes that they place CFI Group on sufficient notice of Genesys' fraudulent-inducement claim. Genesys has therefore satisfied its burden to plead its fraudulent-inducement claim with the required particularity.

Second, CFI Group argues that the License Agreement's merger and integration clause "render[s]" Genesys' fraudulent-inducement claim "legally deficient." (*Id.* at Pg. ID 437.) The Court believes that under the circumstances and procedural posture of this action, CFI Group's merger argument is best addressed at the summary judgment stage of this proceeding.

**F**

Finally, CFI Group argues that Genesys has failed to file its indemnity claims within the applicable statute of limitations. (*See* Mot. to Dismiss, ECF #52 at Pg. ID 440-41.) CFI Group insists that Genesys' indemnification claim is governed by the three-year applicable statute of limitations under Mich. Comp. Laws § 600.5805(2). (*See id.*) And CFI Group says that the clock on that limitations period began to run in 2013 because the License Agreement expired at that time. CFI concludes that Genesys' indemnification claims are time-barred because Genesys did not file them until 2018. The Court disagrees.

Under Michigan law, "after an agreement has expired, an implied contract may arise when the parties continue to perform as before and their conduct demonstrates a mutual assent to a new agreement with the[] rights and obligations measured as provided in the expired contract." *Auto-Owners Ins. Co. v. Campbell-Durocher Grp. Painting & Gen. Contracting, LLC*, 911 N.W.2d 493, 501 (Mich. App. 2017).) *See also Cloverdale Equip. Co. v. Manitowoc Engr. Co.*, 964 F.Supp. 1152, 1162 (E.D. Mich. 1997) (finding an implied agreement where parties "continued 'business as usual'" after expiration of initial agreement); *Comenos v. Viacom Intl., Inc.*, 857 F.Supp. 1160, 1165 (E.D. Mich. 1994) (same). Genesys has plausibly alleged here that the parties formed an implied contract after the License Agreement expired.

Genesys has plausibly alleged that "[a]fter the initial five-year term of the License Agreement, CFI Group and Interactive continued performing under the terms of [that agreement] as if the [a]greement were still in effect" until 2017. (Third-Party Compl. at ¶42, ECF #47 at Pg. ID 398.) That continued performance implies that Genesys and CFI Group "mutually assented to a new contract containing the same provisions as the old." *Comenos*, 857 F.Supp. at 1165. Indeed, Genesys has plausibly alleged that even after the License Agreement expired in 2013, the parties continued to act under the terms of that agreement in at least the following ways:

- CFI Group provided updated survey questions and templates to Interactive;

- The parties jointly updated "certain marketing materials and user guides;"

- A CFI Group representative gave a presentation at an Interactive conference in which the CFI Group employee spoke about "[Interactive's] and CFI Group's ACSI-based question library," and

- CFI Group "repeatedly confirmed that it was 'a partner' with Interactive" on CFI Group's website.

(Third Amended Compl. at ¶¶ 42-43, ECF #47 at Pg. ID 399-40.)

At this stage of the proceedings, accepting Genesys' allegations as true, Genesys has plausibly alleged the existence of a new, implied agreement under

Michigan law that did not expire until 2017. Thus, Genesys' right to indemnification is not time barred on the basis of the License Agreement's expiration in 2013.[4]

# V

For all of the reasons stated above, CFI Group's motion to dismiss Genesys' Third-Party Complaint (ECF #52) is **GRANTED IN PART AND DENIED IN PART**. The motion is **GRANTED** to the extent that it seeks dismissal of Genesys' implied indemnity claims. The motion is **DENIED** in all other respects.[5]

**IT IS SO ORDERED**.

s/Matthew F. Leitman
MATTHEW F. LEITMAN
Dated: February 20, 2019       UNITED STATES DISTRICT JUDGE

---

[4] In CFI Group's supplemental brief, it argued for the first time that any implied contract would run afoul of Michigan's statute of frauds because the contract would have a five-year duration and could not be performed within one year. (*See* CFI Group Supp. Br., ECF #69 at Pg. ID 627-28.) But, as Genesys correctly points out (*see* Genesys Supp. Br., ECF #72 at Pg. ID 721-22), the alleged implied agreement between CFI Group and Genesys included all of the terms of the License Agreement, and that agreement allowed either party to terminate the agreement for any reason upon 60-days written notice. (*See* ECF #52-1 at Pg. ID 445.) Therefore, the implied contract could be performed within one year and would not violate the statute of frauds.

[5] The Court has indicated in text above that it is not yet persuaded by CFI Group's arguments that (1) Interactive could not have assigned its claim for express contractual indemnification to Genesys when those two companies merged; (2) Genesys' negligent misrepresentation claim is duplicative of its breach of warranty claim; (3) Genesys' fraudulent-inducement claim is barred by the License Agreement's merger and integration clause; and (4) Genesys' indemnification claims are barred by the statute of limitations. CFI Group may raise these arguments again, if appropriate, on summary judgment based on a full factual record and more substantial briefing based on that record.

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on February 20, 2019, by electronic means and/or ordinary mail.

<div style="margin-left:40%;">

s/Amanda Chubb (in the absence of Holly A. Monda)
Case Manager
(313) 234-2644

</div>